IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARGARET KEATE,<br><br>Plaintiff,<br><br>v.<br><br>WALKER W. WRIGHT,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND DENYING MOTIONS TO DISMISS** |
| WALKER W. WRIGHT,<br><br>Counterclaimant and Third-Party Plaintiff,<br><br>v.<br><br>MARGARET KEATE and ALEXANDRA ANDERSON,<br><br>Counterclaim and Third-Party Defendants. | Case No. 2:23-cv-305<br><br>Judge Tena Campbell<br>Magistrate Judge Daphne A. Oberg |

This lawsuit is a diversity action in which Plaintiff Margaret Keate asserts claims for conversion and unjust enrichment against Defendant Walker W. Wright. (Compl., ECF No. 1 at ¶¶ 4, 28–38.) Mr. Wright has filed counterclaims against Ms. Keate for unjust enrichment and identity theft. (Countercl., ECF No. 27 at ¶¶ 36–43.) He has also filed a third-party complaint alleging the same claims for unjust enrichment and identity theft against Ms. Keate's daughter, Alexandra Anderson. (Third-Party Compl., ECF No. 28 at ¶¶ 36–43.)

There are three motions pending before the court. First, Ms. Keate filed a motion for summary judgment against Mr. Wright. (ECF No. 54.) The court held a hearing on that motion

1

on December 12, 2024. (Min. Entry, ECF No. 76.) Shortly before that hearing, Ms. Keate filed a motion to dismiss the counterclaims against her for lack of jurisdiction. (ECF No. 74.) Ms. Anderson filed a similar motion to dismiss the third-party claims against her for lack of jurisdiction. (ECF No. 75.) These latter two motions were not fully briefed at the time of hearing, but the court has since received a response from Mr. Wright (ECF No. 79) and replies from Ms. Keate and Ms. Anderson. (ECF Nos. 80 & 81.) All three motions are therefore now ripe for decision.

For the reasons stated below, the court denies Ms. Keate's motion for summary judgment and her motion to dismiss and denies Ms. Anderson's motion to dismiss.

## BACKGROUND

Ms. Keate runs a horse business called The Equine Pavilion in Heber, Utah. (Decl. Margaret Keate, ECF No. 56 at ¶ 2.) In 2014, she formed a limited liability company, Vittorio, LLC (Vittorio), and named Mr. Wright as the manager. (Id. ¶¶ 4, 8.) From the facts provided by the parties, it is somewhat unclear why Ms. Keate formed Vittorio or why she asked Mr. Wright to manage the company. Ms. Keate alleges that she used the Vittorio's bank account "as a repository for income coming in from The Equine Pavilion, and as a source of funds for paying its expenses." (Id. ¶ 10.) Mr. Wright states that he was in his twenties at the time and had a close friendship with Ms. Anderson. (Def.'s Opp'n Mot. Summ. J., ECF No. 65 at 2.)

The parties dispute the ownership of Vittorio. Ms. Keate alleges that Vittorio was a single-member LLC and that she was the only member. (Keate Decl. ¶ 5.) That allegation is corroborated by Ms. Keate's accountant, Kathy Cintas. (See Decl. Kathy Cintas, ECF No. 55 at ¶ 9.) Ms. Cintas notes that she never prepared a K-1 form for Vittorio, which would have been a requirement had Vittorio been owned by more than one member. (Id. ¶¶ 6–8.) But Mr. Wright

2

testified in a deposition that he believed he was the owner of Vittorio. (Dep. Walker Wright, ECF No. 65-1 at 27:24–28:3, 34:10–11.) Mr. Wright held that belief even though he testified that he was "not sure" that he was ever a member of Vittorio. (Id. at 27:21–23.)

The exhibits provided by the parties do not establish ownership conclusively. Vittorio's Certificate of Organization, which was filed with the State of Utah, does not list any members. (See Certificate of Organization, ECF No. 56-1.) Instead, the Certificate of Organization designates Steven M. Rogers as the company's registered agent and Mr. Wright as the company's manager. (Id. at 1.) The Certificate of Organization is signed by both Mr. Rogers and Mr. Wright, but not by Ms. Keate. (Id. at 2, dated July 28, 2014.) The Certificate of Organization also states that Vittorio's principal address is 336 W. Broadway Apt. 402, Salt Lake City, UT 84101—the same address listed for Mr. Wright as the company's manager. (Id. at 1.)

Regardless of who owned Vittorio, the parties do not dispute that in 2014, Ms. Keate opened a bank account at Zions Bank in Vittorio's name. (Keate Decl. ¶ 9.) The Bank Signature Card for the account specifies "Vittorio LLC" as the account title and lists three authorized signers: 1) Vittorio LLC; 2) Mr. Wright; and 3) Ms. Keate. (Bank Signature Card, ECF No. 54-1.) Both Mr. Wright's and Ms. Keate's signatures appear next to their listing as an authorized signer on the account. Mr. Wright's signature appears in two more places: 1) in a box labeled "Tax Reporting Information – W-9 Certification," in which Mr. Wright certified that the taxpayer identification numbers provided were correct; and 2) under the "Limited Liability Company … Authorization" section, in which Mr. Wright certified that he was a "member(s) or manager(s) of the limited liability company named on this Signature Card, with authority to transact banking business on behalf of such limited liability company …." (Id.) Only Mr. Wright signed these certifications. (Id.) Under Mr. Wright's signature for the second

3

certification are the words "Manager or Member." (Id.) Two other spaces where a "Manager or Member" could sign are blank. (Id.)

Ms. Keate alleges that Mr. Wright was "authorized to write checks on the Bank Account, in anticipation that there might be times when [Ms. Keate] was unavailable to write checks in payment of the Equine Pavilion's expenses (for care of the horses, for example) that needed to be paid." (Keate Decl. ¶ 12.) But it appears that Mr. Wright did little to manage Vittorio, as he moved from Utah to California a few months later. (Id. ¶ 15.) Mr. Wright admits that he did not deposit money in Vittorio's bank account or take money out to pay expenses. (Wright Dep. 65:25–66:6.) And Ms. Keate asserts that Mr. Wright "had no managerial duties relative to Vittorio or the Equine Pavilion" other than occasionally writing checks drawn on the Vittorio account. (Id. ¶ 14.)

The State of Utah later involuntarily dissolved Vittorio, evidently on two separate occasions. In his opposition to Ms. Keate's motion for summary judgement, Mr. Wright attached two exhibits that he sent to Ms. Keate in his first set of requests for admission. (See Ex. E to Def.'s Opp'n, ECF No. 65-5.) First, there is an Application for Reinstatement dated February 24, 2017. (Ex. A to ECF No. 65-5.) That document, filed with the State of Utah Department of Commerce, states that Vittorio was involuntarily dissolved on February 26, 2016, and asks for Vittorio to be reinstated as a limited liability company. (Id.) The document is signed by Walker Wright as the "sole member" of the business entity. (Id.) And in response to the question, "Is this a female owned business?" the application states: "No." (Id.) Mr. Wright testified that the signature on the document did not look like his and stated: "I believe that's Alex Anderson's writing." (Wright Dep. 61:7–22.)

4

Second, Mr. Wright attached a Bank Signature Card for Vittorio's account at Zions Bank dated January 13, 2017. (Ex. B to ECF No. 65-5.) Like the first Bank Signature Card, there are three authorized signers listed: 1) Vittorio LLC; 2) Mr. Wright; and 3) Ms. Keate. (Id.) But on this document, Mr. Wright's signature only appears after the tax reporting certification, whereas Ms. Keate's signature appears under the limited liability company authorization as "Manager or Member." (Id.) Mr. Wright's signature does not resemble his signature on the first Bank Signature Care. (Compare id., with ECF No. 54-1.)

Ms. Keate alleges that the State of Utah administratively dissolved Vittorio in 2018. (Keate Decl. ¶ 16.) In support of this statement, she references a Record of Administrative Dissolution "attached as Exhibit B to Keate's Declaration." (ECF No. 54 at 5.) But that exhibit is a copy of the Application for Reinstatement—listing a dissolution date of February 26, 2016—that is referenced above. (See Ex. B. to Keate Decl., ECF No. 56-2.) The assertion that Vittorio has been dissolved is, however, supported by a public record that Ms. Keate attaches as an exhibit to her motion to dismiss. (See Record Admin. Dissolution, ECF No. 74-2.) That exhibit, a copy of Vittorio's state business record,[1] reflects that Vittorio's status expired on October 29, 2018, for "Failure to File Renewal." (Id.) The record also lists Walker Wright as the LLC's registered agent. (Id.) Ms. Keate testified that, "[t]o the best of my recollection, I did not know [about Vittorio's dissolution] at the time." (Keate Decl. ¶ 16.)

Ms. Keate asserts that she continued to use the Vittorio bank account in the same manner after Vittorio dissolved (id. ¶ 18), but there is no other evidence in the materials provided by the

---

[1] This record is publicly available by searching for "Vittorio" under the Business Entity Records search on the Utah Division of Corporations and Commercial Code's website. Available at: https://businessregistration.utah.gov/EntitySearch/OnlineEntitySearch (last accessed Sept. 16, 2025).

parties that indicates any additional business activity took place concerning Vittorio. Ms. Keate has not explained why she continued to maintain and use a bank account in the name of a dissolved business entity.

The parties do not dispute the basic facts concerning the event that instigated this lawsuit. On April 14, 2023, Mr. Wright appeared at California Bank & Trust, an affiliate of Zions Bank in California, and withdrew all the remaining funds—$184,021.46—from the Vittorio bank account. (Wright Dep. 41:16–48:25; Keate Decl. ¶¶ 21, 26.) Ms. Keate had not authorized Mr. Wright to withdraw any funds and only learned that no money remained in the Vittorio bank account when certain checks that Ms. Keate had written on that account did not clear. (Keate Decl. ¶¶ 21–24.) Ms. Keate asserts that all the money in the account had been deposited by her and generated by her businesses. (Id. ¶ 26; see also Wright Dep. 50:4–7 (admitting that Mr. Wright had not personally put any money into the account).)

On the withdrawal form, Mr. Wright listed his title as "Member." (See Wire Transfer, ECF No. 54-2 at 2.) Mr. Wright testified that he transferred the funds to his lawyers' trust accounts: first to Joseph Soliz, and then later to a new attorney, Manfred Steinberg. (Wright Dep. 50:19–51:23.) Mr. Wright has used at least some of the money to pay his legal fees. (Id. at 55:20–56:25.) He also testified that he withdrew the money—and has refused to return any money to Ms. Keate—because: "I am still scared that I owe the IRS money … in regards to the Vittorio accounts." (Id. at 54:7–10.) There is no evidence in the record that the Internal Revenue Service (IRS) has ever questioned Mr. Wright about any tax liability for Vittorio.

Shortly after Mr. Wright withdrew all the money from the Vittorio account, Ms. Keate testified that she "reorganized Vittorio, LLC ('Vittorio II') as a Utah limited liability company." (Keate Decl. ¶ 30.) Utah business records reflect that a limited liability company named

6

Vittorio LLC was formed on April 21, 2023, and that Ms. Keate is listed as the sole member and the registered agent.[2]

## LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that might affect the outcome of the case. See Birch v. Polaris Indus., Inc., 812 F.3d 1238, 1251 (10th Cir. 2015) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). "At the summary judgment stage, evidence need not be submitted 'in a form that would be admissible at trial.'" Argo v. Blue Cross Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). But courts should disregard statements that could not be presented at trial in any admissible form. See id.

Once the movant shows there is an absence of a genuine dispute of material fact, Celotex, 477 U.S. at 323, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[W]hile [courts] draw all reasonable inferences in favor of the non-moving party, 'an inference is unreasonable if it requires a degree of speculation and conjecture that renders [the factfinder's] findings a guess or mere possibility.'" GeoMetWatch Corp. v. Behunin, 38 F.4th 1183, 1200 (10th Cir. 2022) (quoting Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus

---

[2] See supra n. 1.

Fin., N.A., 858 F.3d 1324, 1334 (10th Cir. 2017)).

## ANALYSIS

### I. Ms. Keate's Motion for Summary Judgment

The facts presented in this action—even those on which the parties agree—are exceedingly odd. And there is much in the record that remains unexplained. Essentially, Ms. Keate, potentially with the help of her daughter, Ms. Anderson, organized an LLC in 2014 for reasons unknown. For reasons equally unknown, Ms. Keate asked Mr. Wright to manage Vittorio, and it is Mr. Wright's name—and not Ms. Keate's—that appears on Vittorio's Articles of Organization. Both Ms. Keate and Mr. Wright were authorized signers on Vittorio's bank account.

But Mr. Wright never did much managing of Vittorio, and he moved to California shortly after the LLC was organized. It then appears that the State of Utah administratively dissolved Vittorio in 2016, only to reinstate the organization in 2017 based on a filing signed by Mr. Wright, even though both parties recognize that the signature on that document does not resemble Mr. Wright's signature. The State of Utah then administratively dissolved Vittorio a second time, in 2018, but Ms. Keate continued to use Vittorio's account for reasons that are not stated, other than that she may not have been aware of Vittorio's dissolution.

Most strangely, around five years after Vittorio was dissolved—and approximately nine years after Mr. Wright's last involvement with Vittorio—Mr. Wright walked into a bank in California and withdrew all the money in Vittorio's account. Mr. Wright cites concerns about potential tax liability but has never received any communications from the IRS suggesting that he is delinquent in any tax payments.

Given the paucity of details in the record, the court cannot enter summary judgment in favor of Ms. Keate on her claims against Mr. Wright for conversion and unjust enrichment. A claim for conversion requires "an act of wilful [sic] interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession." Fibro Tr., Inc. v. Brahman Fin., Inc., 974 P.2d 288, 295–96 (Utah 1999) (citation omitted). To succeed on her claim, Ms. Keate must show that she was "entitled to immediate possession of the property at the time of the alleged conversion." Id. at 296 (citation omitted). And to succeed on her claim for unjust enrichment, Ms. Keate must demonstrate: "(1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." Jeffs v. Stubbs, 970 P.2d 1234, 1248 (Utah 1998) (cleaned up).

The entry of summary judgment is preluded for both claims because there are genuine issues of material fact about Vittorio's formation and dissolution.

Ms. Keate avers that she was the sole member of Vittorio and provides her own declaration and the declaration of her accountant[3] in support of that assertion. But there are no documents on which Ms. Keate is listed as a member. Instead, the Certificate of Organization lists only Mr. Wright—albeit as a manager, not a member. It was also Mr. Wright who signed the

---

[3] Mr. Wright asks the court to disregard the declaration provided by Mr. Wright's accountant, Ms. Cintas, arguing that it constitutes undisclosed expert testimony. (ECF No. 65 at 19–20.) The court disagrees. In her declaration, Ms. Cintas states that she has prepared Ms. Keate's tax returns since 2017, that Ms. Cintas included Vittorio's income and expenses on Schedule C of Ms. Keate's individual tax return, and that Vittorio did not issue any K-1 forms. (Cintas Decl. ¶¶ 4–9.) These statements are lay opinions based on Ms. Cintas's experience that do not require any specialized knowledge. The court does not rely on any statements containing a legal opinion about whether Mr. Wright has any tax liability. (See id. ¶¶ 11–12.)

9

form authorizing himself and Ms. Keate as signatories to the bank account. His signature on this form—and only his signature, even though there were multiple blanks where a "manager or member" could sign—states that he was a "manager or member." Mr. Wright's name also appears on the mysterious 2017 Application for Reinstatement, where he is listed as Vittorio's "sole member," and on the 2017 Bank Signature Card for Vittorio's account. Although Ms. Keate argues that Vittorio never filed a tax return because, as Vittorio's sole member, she instead included Vittorio's income "on Schedule C of my personal federal income tax returns" (Keate Decl. ¶ 20), she did not provide any tax returns in support of that claim to the court or to Mr. Wright during discovery. (See Keate's Answers to Interrogatories, Ex. D to Def.'s Opp'n, ECF No. 65-4 at 5–6 (stating that Ms. Keate's tax returns were "not relevant to any of the claims made in this litigation").)

Accordingly, there is a genuine issue in dispute about whether Ms. Keate was the sole member of Vittorio, as she and her accountant have declared, or whether Mr. Wright was, in fact, either a member or the sole member of Vittorio, as both Vittorio's Certificate of Organization and the 2017 Application for Reinstatement suggest. And that issue is material both to whether Ms. Keate was entitled to the $184,000 at the time Mr. Wright withdrew those funds (a fact that Ms. Keate must establish to succeed on her conversion claim), and to whether it would be inequitable to allow Mr. Wright to retain the benefit of that money (a fact that Ms. Keate must establish to succeed on her unjust enrichment claim).

Similarly, there are genuine issues of material fact about when and how Vittorio dissolved. Assuming that the State of Utah administratively dissolved Vittorio (first in 2016, and then again in 2018), any money left in Vittorio's account should have been used for the sole purpose of paying off Vittorio's debts and winding up Vittorio's assets. See Utah Code Ann.

§ 48-3a-708(4) ("A limited liability company that is administratively dissolved continues in existence as an entity but may not carry on any activities except as necessary to wind up its activities and affairs and liquidate its assets …, or to apply for reinstatement …."). It does not appear that Vittorio has ever applied for reinstatement, although Ms. Keate organized a <u>new</u> company with the same name. (<u>See</u> ECF No. 65-4 at 3 (acknowledging that the new Vittorio company "[c]arries the same name as the prior company, but is a newly formed limited liability company"). It is possible that Ms. Keate cannot apply for reinstatement because there are no documents listing her as a member for the old Vittorio company.

Under Utah law, when a limited liability company winds up, the company shall first "apply its assets to discharge its obligations to creditors, including members that are creditors." Utah Code Ann. § 48-3a-711(1). Although Ms. Keate avers that all the money in the Vittorio account "had been deposited by me, and generated by my businesses" (Keate Decl. ¶ 26), the lack of a full record about the source of these deposits means that the court cannot determine whether Vittorio had any creditors. After its creditors have been paid, a limited liability company that is winding up must then distribute any surplus assets "to each person owning a transferable interest that reflects contributions made and not previously returned …." Utah Code Ann. § 48-3a-711(2)(a). But a "transferable interest" means "the right, as initially owned by a person in the person's capacity as a member, to receive distributions from a limited liability company in accordance with the operating agreement …" <u>Id.</u> § 48-3a-102(29). Here, the parties have provided the court with no evidence of an operating agreement, likely because there wasn't one.[4]

---

[4] Utah limited liability companies are not required to draft an operating agreement (<u>see</u> Utah Code Ann. § 48-3a-201(4) (requiring only a certificate of organization and at least one member to form a limited liability company)), but such an agreement is certainly recommended as a good business practice to avoid precisely the type of situation presented to the court by the facts here.

As a result, there do not appear to be any transferable interests. Finally, a limited liability company that is winding up must distribute its remaining assets "in equal shares among members and dissociated members …." Id. § 48-3a-711(2)(b). The appropriate disposition of Vittorio's assets may therefore turn on the same disputed issue noted above: namely, a finding about who were the proper members of the limited liability company. If a factfinder determined that Mr. Wright were the sole member of Vittorio, then Mr. Wright may have a right to the funds in Vittorio's account, even though those funds were deposited by Ms. Keate.

For these reasons, the court finds there are genuine issues of material fact concerning: 1) how and why Vittorio was organized; 2) who signed the Application for Reinstatement in 2017; 3) the appropriate disposition of assets after Vittorio was dissolved; 4) the source of the money that Ms. Keate deposited in the account after Vittorio's dissolution; and, most importantly, 5) the identity of Vittorio's members. Given the existence of these genuine issues of material fact, the court denies Ms. Keate's motion for summary judgment.

## II.   Ms. Keate and Ms. Anderson's Motions to Dismiss

Ms. Keate and Ms. Anderson have moved to dismiss Mr. Wright's counterclaims and third-party claims, respectively, on the basis that the court has no jurisdiction over these claims. Specifically, Ms. Keate and Ms. Anderson maintain that Mr. Wright's claims do not meet the amount-in-controversy requirement under 28 U.S.C. § 1332 and are not part of the same common nucleus of operative fact such that the court may exercise supplemental jurisdiction under 28 U.S.C. § 1367.

The court disagrees. The district courts have supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

28 U.S.C. § 1367. The exercise of supplemental jurisdiction promotes judicial economy and fairness by allowing district courts to retain jurisdiction "over mixed state and federal claims where 'The state and federal claims … derive from a common nucleus of operative fact.'" Estate of Harshman v. Jackson Hole Mtn. Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)).

Here, Mr. Wright asserts two counterclaims against Ms. Keate, and the same two third-party claims against Ms. Anderson, for 1) unjust enrichment; and 2) identity theft. (Countercl., ECF No. 27 at ¶¶ 36–43; Third-Party Compl., ECF No. 26 at ¶¶ 36–43.) In short, Mr. Wright alleges that Ms. Keate and Mr. Anderson created a limited liability company in his name and used that business and Mr. Wright's personal identifying information to obtain goods and services without compensating him. (Id.)

Ms. Keate and Ms. Anderson have not argued whether Mr. Wright has adequately stated a claim upon which relief can be granted; nor have they argued whether the claims are timely, although both have raised a statute of limitations defense in their answers. (See Keate Ans., ECF No. 33 at 3–4; Anderson Ans., ECF No. 45 at 3–4.) Instead, they merely assert that Mr. Wright's claims raise issues related to Vittorio's formation that are insufficiently intertwined with Ms. Keate's claims (which Ms. Keate and Ms. Anderson assert relate only to events in 2023) to be considered as part of the same case or controversy.

But as the court has discussed above, Ms. Keate's claims are indeed intertwined with questions about Vittorio's formation and its membership, and the court cannot resolve those claims without additional factfinding related to these issues. Although there may be other reasons why Mr. Wright's claims fail, the court finds that his claims derive from the same

13

common nucleus of operative fact such that the court may appropriately exercise supplemental jurisdiction. The court therefore denies both motions to dismiss.

### III. Settlement Conference and Trial

Having denied the pending motions, the court must now determine how the case should proceed. Mr. Wright has requested a jury trial for "all matters so determinable" (Def.'s Ans., ECF No. 25 at 10), but the court is hesitant to call in a jury before resolving a threshold matter: namely, a determination about Vittorio's membership. As discussed above, the court finds that there are disputed issues about whether Ms. Keate, Mr. Wright, or both were members of the limited liability company. Should a factfinder determine that Ms. Keate was not a member, then Ms. Keate must demonstrate that she nevertheless has standing to pursue her claims. The Tenth Circuit has "repeatedly characterized standing as an element of subject matter jurisdiction." Hill v. Vanderbilt Capital Advisors, LLC, 702 F.3d 1220, 1224 (10th Cir. 2012). And the court must dismiss the action at any time if it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); see also New England Health Care Emp. Pension Fund v. Woodruff, 512 F.3d 1283, 1288 (10th Cir. 2008) ("It is well established that any party, including the court sua sponte, can raise the issue of standing for the first time at any stage of the litigation …."). Accordingly, the court proposes to determine the threshold issue of Vittorio's membership by holding an evidentiary hearing on this question. It is possible that a resolution of this question will resolve the action as a whole, but if any triable issues remain the court will then set a jury trial.

Alternatively, the parties may wish to consider settlement. The unique facts presented here have not rendered this matter amenable to a speedy judicial determination. The court shares Ms. Keate's confusion about why Mr. Wright withdrew the money from Vittorio's account, as Mr. Wright has presented no evidence that there remains a credible threat of any tax liability

associated with the long-dissolved company. But it is Ms. Keate's failure to observe proper corporate formalities and best practices, such as by failing to provide the court with any operating agreement or public documents establishing that Ms. Keate was a member of Vittorio, the failure to remove Mr. Wright as a signatory to Vittorio's account, and the continued use of a bank account for a dissolved company, that has prevented a simple resolution of this action. The court will therefore allow the parties 14 days from the date of this order to file a stipulated motion for a judicial settlement conference before the court sets an evidentiary hearing.

## ORDER

For the foregoing reasons, the court ORDERS as follows:

1. The court DENIES Ms. Keate's Motion for Summary Judgment. (ECF No. 54.)

2. The court DENIES Ms. Keate's Motion to Dismiss Counterclaims for Lack of Jurisdiction. (ECF No. 74.)

3. The court DENIES Ms. Anderson's Motion to Dismiss Third-Party Claims for Lack of Jurisdiction. (ECF No. 75.)

4. The parties must file any stipulated motion for a judicial settlement conference within 14 days from the date of this order. The form for this motion is available on the court's website.[5]

5. Should the parties decline to request a settlement conference, the court will schedule an evidentiary hearing for the purpose of determining Vittorio's membership and assuring itself that Ms. Keate has standing to pursue her claims.

---

[5] Available at: https://www.utd.uscourts.gov/forms/stipulated-motion-judicial-settlement-conference.

DATED this 17th day of September, 2025.

BY THE COURT:

_____
Tena Campbell
United States District Judge